# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

ASHLEY RANAE PARKER,    )
    )
       Plaintiff,    )
    )
       v.    )    **Case No. CIV-17-250-SPS**
    )
COMMISSIONER of the Social    )
Security Administration,    )
    )
       Defendant.    )

## OPINION AND ORDER

The claimant Ashley Ranae Parker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty years old at the time of the administrative hearing (Tr. 52). She has a ninth grade education and no past relevant work (Tr. 70, 207). The claimant alleges she has been unable to work since January 1, 2000, due to paranoid schizophrenia, depression, and anxiety (Tr. 184, 207).

## Procedural History

On July 18, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 184-90). Her application was denied. ALJ Larry Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 26, 2016 (Tr. 29-39). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform work at all exertional levels with the following nonexertional limitations: (i) simple, routine, and repetitive tasks; (ii) relate to supervisors and coworkers on a superficial work basis; (iii) respond to usual work situations; and (iv) no contact with the general public (Tr. 33). The ALJ then concluded that although the claimant had no past relevant work, she was nevertheless not

disabled because there was work she could perform in the national economy, *e. g.*, hand packager, machine attendant, and laundry worker (Tr. 37-38).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinion of treating physician Dr. Wellie Adlaon. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant's major depressive disorder, obsessive-compulsive disorder, and bipolar disorder were severe impairments, but that her seizure disorder, irritable bowel syndrome, and low blood pressure were not medically determinable (Tr. 31). The relevant medical evidence reveals that Dr. Lawren Meredith treated the claimant for generalized anxiety disorder and depressive disorder not otherwise specified on two occasions in July 2012 (Tr. 312-15). Thereafter, Dr. Ursula Bowling completed a psychological consultative examination of the claimant on December 20, 2013 (Tr. 341-45). Dr. Bowling noted that the claimant was very labile, had a depressed affect, appeared to have low energy, and evidenced high anxiety during the interview (Tr. 341-43). On examination, Dr. Bowling found the claimant had very poor recall and memory; poor concentration, attention, judgement and insight; and average intelligence (Tr. 343). She made a provisional diagnosis of major depression with psychotic features, rule out psychotic disorder not otherwise specified, bipolar disorder with psychotic features, schizophrenia, or malingering (Tr. 343). Dr. Bowling stated that she was perplexed by the severity of the symptoms the claimant endorsed and exhibited combined with the lack of

medical care (Tr. 344). She further noted that her diagnosis was highly provisional given the lack of records and the claimant's very poor reporting of her history (Tr. 344).

The claimant next received mental health care in September 2014 (Tr. 346). On September 3, 2014, the claimant presented to Dr. Wellie Adlaon and reported distractibility, grandiosity, racing thoughts, and hyperactivity (Tr. 347-48). Dr. Adlaon diagnosed the claimant with paranoia, major depression, anxiety and depression, and mood swings (Tr. 347). Thereafter, Dr. Adlaon continued treating the claimant through at least October 2015 (Tr. 354, 361-80). During this time, Dr. Adlaon's mental status examinations were consistently normal and the claimant was treated with medication (Tr. 346-47, 361-80).

Dr. Adlaon completed a form titled "Medical Source Statement – Mental" on December 3, 2014 (Tr. 355-56). He opined that the claimant was markedly limited in nine aptitudes, including her ability to: (i) maintain attention and concentration for extended periods, (ii) interact appropriately with the general public, and (iii) get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 355-56). He further opined that the claimant was moderately limited in her ability to: (i) understand, remember, and carry out detailed instructions; (ii) make simple work-related decisions; (iii) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (iv) set realistic goals or make plan independently of others (Tr. 355-56). Dr. Adlaon found that the claimant was either mildly limited or not limited in the remaining six aptitudes he evaluated (Tr. 355-56).

On January 8, 2014, state agency psychologist Julia Wood, Ph.D. completed a Mental RFC Assessment and found that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions, and interact appropriately with the general public (Tr. 83). Dr. Wood found the claimant was moderately limited in her ability to maintain attention and concentration for extended periods, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 83). Dr. Wood concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 83). Dr. Wood's findings were affirmed on review (Tr. 94-96).

At the administrative hearing, the claimant testified that when she tries to concentrate or stay on task she gets side-tracked, "zones out," and forgets what she is doing (Tr. 60). She further testified that she sometimes forgets to take a shower and will go three or four days before she remembers to take one, and that she stays in her pajamas everyday (Tr. 67). Regarding her obsessive-compulsive disorder, the claimant stated that she counts letters and numbers, and is compelled to touch things a certain way (Tr. 67). She also stated that she experiences racing thoughts all the time, even with medication (Tr. 67). The claimant further indicated that she experiences auditory and visual hallucinations throughout the day three or four times per week (Tr. 68).

In his written opinion, the ALJ summarized the claimant's testimony and some of the medical evidence. The ALJ assigned some weight to Dr. Adlaon's opinion, citing with approval all of the mild limitations, the moderate limitation in the claimant's ability to

understand, remember, and carry out detailed instructions, and the marked limitation in her ability to interact appropriately with the general public (Tr. 35). The ALJ assigned little weight to all of Dr. Adlaon's remaining findings because they were inconsistent with his own treatment notes from February 2015 through October 2015, that indicate, *inter alia*, the claimant's thought content contained no hallucinations, compulsions, or delusions; her mental associations were intact; she demonstrated appropriate judgment and insight; her mood and affect were normal; and her thought processes and cognitive functioning exhibited no attention deficit and no impairment of concentration (Tr. 35). The ALJ then assigned great weight to the state agency psychologists' opinions without further explanation (Tr. 36). The ALJ did not mention or discuss Dr. Bowling's consultative examination.

The claimant asserts that the ALJ erred in his analysis with regard to Dr. Adlaon's opinion, and the Court agrees. As part of this discussion, the Court points out the ALJ's additional error with regard to his lack of analysis of Dr. Bowling's opinion that also lends support to the argument for reversal, but notes that the basis for reversal lies in the ALJ's error with regard to Dr. Adlaon. The medical opinions of a treating physician such as Dr. Adlaon are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and

frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ erred in his analysis of Dr. Adlaon's opinion for several reasons. First, the ALJ's finding that Dr. Adlaon's treatment notes were inconsistent with his opinion was arguably a legitimate basis for rejecting his opinion, however the ALJ failed to analyze Dr. Adlaon's opinion in accordance with any of the other *Watkins* factors outlined above. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ ] 404.1527.'"), *quoting Watkins,* 350 F.3d at 1300. The ALJ referenced the correct analysis at the beginning of step four, but in focusing solely on the consistency factor, did not fulfill the weighing analysis required by *Watkins*. This analysis was particularly important here because Dr. Adlaon was the only treating physician in the record who opined as to the claimant's psychological limitations.

Additionally, the ALJ adopted Dr. Adlaon's findings as to the claimant's ability to perform skilled work and interact with the general public, but rejected without explanation his limitations regarding the claimant's ability to maintain attention and concentration for extended periods, perform activities within a schedule, work in coordination with or proximity to others without being distracted by them, complete a normal work day and work week without interruptions from psychologically-based symptoms, accept instructions, respond appropriately to changes in the work setting, and travel in unfamiliar places (Tr. 34). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). In addition to evaluating Dr. Adlaon's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of his findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

The ALJ's error in analyzing Dr. Adlaon's opinion is compounded by his error in failing to assess Dr. Bowling's opinion at all. The opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The ALJ performed no such analysis of Dr. Bowling's opinion, and instead relied on the state agency psychologists' opinions that pre-dated much of the claimant's mental health treatment.

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 21st day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**